**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Cr. No. 19-162 (JEB)** |
| | ) | |
| **WILLIAM BROWN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

<u>**SENTENCING MEMORANDUM**</u>

Mr. Brown, through undersigned counsel, respectfully submits this memorandum requesting that the Court consider his entire life and the various legal arguments made in this sentencing memorandum in determining a fair and just sentence.

<u>**BACKGROUND**</u>

On August 1, 2019, Mr. Brown pled guilty to the two-count Superseding Information which charged him with Count One - Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g); and Count Two – Unlawful Distribution of a Controlled Substance, in violation of 48 D.C. Code § 904.01(a)(1).  The PreSentence Report (PSR) calculates the applicable guidelines range for the above-mentioned conduct as 21 to 27 months.  *See* PSR ¶ 101, pg. 24. There are no dispute to this calculation, and consistent with the terms of the plea agreement in this case, the government will be allocuting for a sentence of 21 months.  *See* PSR ¶ 109, pg. 25. Notwithstanding the guideline calculations and consistent with the terms of the plea agreement, Mr. Brown is seeking a sentence of 16 months incarceration which is a slight variance from the calculated guideline range.

## ARGUMENT

Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.** (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a).

When sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50. Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. *Rita v. United States*, 551 U.S. 338, 348, 350 (2007). Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." *Id*. at 358; *see also Gall*, 552 U.S. at 52 ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the

punishment to ensue.'" (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996))).  Indeed,

sentencing has been aptly described:

> Of course, each defendant must be assessed on his or her own terms: courts are not
> machine presses and sentences are not widgets to be churned out on some criminal
> justice conveyor belt.  But a properly calculated guidelines sentence provides useful
> data, a "starting point" or "initial benchmark," even as it remains the judge's duty
> to tailor every sentence to the case and defendant at hand.

*United States v. Sabillon-Umana*, 772 F.3d 1328, 1330 (10th Cir. 2014) (Gorsuch, J.)

Ultimately, this Court must make an "individualized judgment about the case at hand."  *Id.* at

1331.

The D.C. Circuit has emphasized "that the Guidelines are truly *advisory*."  *United States*

*v. Gardinelli*, 545 F.3d 1089, 1096 (D.C. Cir. 2008) (emphasis in original).  The Court in

*Gardinelli* noted that the Supreme Court's decision in *Gall* gave "district judges *even more*

discretion and authority."  *Id.* (emphasis in original).  Indeed, the Court in *Gardinelli* pointed out

that in *Gall* the Court affirmed a probationary sentence for a defendant whose guidelines range

was 30 to 37 months.  *Id.* at 1095.

## I.    The History and Characteristics of Mr. Brown

Mr. Brown is a 44-year old native Washingtonian.  He had a difficult childhood in that he

lacked guidance, direction, and support from his family.  At the age of eleven, Mr. Brown's

father left the family home and effectively terminated any relationship with him.  Like so many

young men, Mr. Brown turned to the streets for the guidance he so desperately craved.  The

streets were extremely violent to Mr. Brown.  In 1997, he was shot in the face and almost died.

*See* PSR ¶ 81, pg. 21.  After two years of pain, physical therapy, and treatment, Mr. Brown

finally recovered.

Since the early 2000's Mr. Brown has struggled with issues of drug use, lack of an education to obtain a meaningful job, and stability. However, now that he is in his 40's Mr. Brown has tried to 'find another way' to live his life. Notably, his long-standing significant other, Liliana Sanchez, has been a source of stability, guidance, and love. *See* PSR ¶ 77, pg. 21. However, all of that stability almost came to end when Ms. Sanchez suffered a severe spinal cord injury in early 2018 that left her parlayzed. As Ms. Sanchez writes to this Court,[1] Mr. Brown has been a constant source of support to her as she has battled back from her injury. Notably, she states, "he pushed me and motivated me when I was tired and felt like giving up because he never gave up on me making a full recovery." *See* Exhibit. She also states that Mr. Brown is showing signs of maturity and "taking all the necessary steps to demonstrate that he wants to do the right things." *Id*. at pg. 2.

Mr. Brown submits that he is trying to take the necessary steps to live a more law-abiding productive life. He recognizes that education is a component of those steps and has endeavored to participate in GED classes since his incarceration. Mr. Brown hopes to complete his GED while incarcerated and believes he can accomplish this goal in the next 12 months. In addition to these educational pursuits, Mr. Brown is a hard worker. Since his incarceration, he has been assigned to a work detail inside the jail. Notably, he likes working and realizes that when he is working and focused, he is a law-abiding member of the community. However, when his work becomes unstable, that is when he has returned to behaviors of selling drugs. *See* PSR ¶ 91, pg. 23. As Ms. Sanchez's letter states, Mr. Brown has two different jobs waiting for him upon his release. Mr. Brown is eager to get back to the community and back to work.

---

[1]     A copy of her letter to this Court is attached as an exhibit.

## II.    The Need for the Sentence Imposed

18 U.S.C. § 3553(a) directs the Court to consider four objectives of federal sentencing to impose a sentence that is "sufficient, but not greater than necessary" to achieve those goals. The first purpose is to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Mr. Brown accepts responsibility for his conduct and understands the seriousness of his offense.

Another purpose of sentencing is to "afford adequate deterrence." *Id.* at § 3553(a)(2)(B). While "[p]rison is an important option for incapacitating and punishing those who commit crimes," evidence shows that lengthy prison sentences do not have a "chastening" effect and "produce at best a very modest deterrent effect." *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice (May 2016) at 1-2. Research shows conclusively that "[t]he *certainty* of being caught is a vastly more powerful deterrent than the punishment," that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime," and that "[i]ncreasing the severity of punishment does little to deter crime." *Id.* (emphasis in original). Significantly, "the crime prevention benefit falls far short of the social and economic costs," *id.* at 2, especially in light of the fact that U.S. Sentencing Commission "research has demonstrated that reductions to sentence length and time served do not harm public safety," *Transforming Prisons, Restoring Lives*, Charles Colson Task Force on Federal Corrections, Urban Inst. (Jan. 2016) at 21. *See also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardoza J. Conflict Resolution 421, 447-48 (2007) ("Certainty of punishment is empirically known to be a far better deterrent than its severity.").

### III.    A Sentence Below the Guideline is Not an Unwarranted Sentencing Disparity

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

Over the last five years, courts have been increasingly imposing non-government sponsored below guideline sentences in firearm cases. *See* Quick Facts, Felon in Possession of a Firearm  https://www.ussc.gov/research/quick-facts/section-922g-firearms   In 2017, courts imposed non-government sponsored below guideline sentences in nearly 25 percent of these cases. *Id.* Of those offenders who received a non-government sponsored below guideline sentence, the average reduction was approximately 33%. *Id.*

In addition to the below guideline sentences that have been imposed, the U.S. Sentencing Commission (U.S.S.C.) has also identified stark racial discrepancies in sentences that cannot be attributed to differences in criminal history or crime characteristics. The U.S.S.C. attributes a significant amount of the discrepancy to judicial discretion, finding that the court grants White defendants sentences that are below their guideline range at a higher rate than Black defendants. According to the U.S.S.C., "Black male offenders received longer sentences than similarly-situated White male offenders" by an average of 19.1 percent. *See* U.S. Sentencing Comm'n,

DEMOGRAPHIC DIFFERENCES IN SENTENCING: AN UPDATE TO THE 2012 *BOOKER* REPORT, 2 (2017), found at https://www.ussc.gov/research/research-reports/demographic-differences-sentencing

For firearms offenses since 2012, Black men received sentences that were on average 19.3 percent longer than similarly positioned White men.  *Id.* at 29.  The U.S.S.C. found that "non-government sponsored departures and variances" were a major contributor to the discrepancy, stating that "Black defendants were 21.2 percent *less* likely to receive a non-government sponsored downward departure or variance." *Id.* at 2.  When Black defendants did receive a variance, their sentences were was 16.8% longer than those of similarly situated white male offenders.  Therefore, consistent with the higher rates of downward departures given to similarly situated White defendants for similar violations, Mr. Brown should receive a variance – a sentence below the calculated guideline range.

## <u>CONCLUSION</u>

A sentence below the calculated guidelines range, followed by a three-year term of supervised release is a serious consequence that will more than adequately punish Mr. Brown for his particular conduct and will also adequately deter any future wrongful conduct.  Thus, for the reasons stated above, including Mr. Brown's history and characteristics, together with the other goals of sentencing, Mr. Brown respectfully requests that the Court impose a sentence below the calculated guidelines range to be followed by a three-year term of supervised release.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500